**Connie KEEL, Petitioner,**

v.

**Warden J. DOVEY, et al., Respondents.**

**No. CV 03–2907–RGK(OP).**

United States District Court,
C.D. California.

Oct. 30, 2006.

---

Connie Keel, at California Institution for Women, Chino, CA, in Pro per.

Deputy Attorney General G. Michael German, California Department of Justice, San Diego, for Respondents.

ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

KLAUSNER, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Complaint, all the records and files herein, and the Report and Recommendation of the United States Magistrate Judge. The Court concurs with and adopts the findings, conclusions, and recommendations of the Magistrate Judge.

IT IS ORDERED that Judgment be entered granting Defendant's Motion for Summary Judgment and dismissing this action with prejudice.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PARADA, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

PROCEEDINGS

On April 25, 2003, Plaintiff, Connie Keel ("Plaintiff"), an inmate at California Institution for Women at Chino ("CIW") filed the current *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. The Complaint names five defendants ("Defendants"): Warden J. Dovey ("Dovey"); Associate Warden John Lee ("Lee"); Correctional Lieutenant S. Randolph ("Randolph"); Correctional Officer K. Jones ("Jones"); and Correctional Lieutenant A. Pahua ("Pahua"), all of whom are sued in their individual and official capacities. *See* Complaint at 3–5.

The gravamen of Plaintiff's claims is that Defendants violated her civil rights by placing her in Administrative Segregation ("Ad Seg") pending an investigation of a disciplinary charge against her and, thereafter, conducting a disciplinary hearing that violated her procedural due process rights. *See* Complaint at 5—Supp. pp. 1–

3. Plaintiff seeks only injunctive relief.[1] *See* Complaint at 6.

On November 18, 2005, Defendants filed a Motion for Summary Judgment ("MSJ"). Defendants contend summary judgment is proper for the following reasons: i) Plaintiff did not have a liberty interest in remaining free from administrative segregation; ii) assuming a liberty interest was involved, Plaintiff received all the process due her; iii) Defendants are immune from suit in their official capacities; iv) injunctive relief is not proper in this case; and v) Warden Dovey may not be held liable under a theory of *respondent superior.*

On November 23, 2005, the Court issued a minute order explaining to Plaintiff the requirements for opposing a motion for summary judgment, in accordance with *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999). On January 13, 2006, Plaintiff filed her Declaration in Opposition to the MSJ, statement of genuine issues, Plaintiff's declaration re: Defendants' proposed statement of facts in support of Defendants' summary judgment motion and exhibits in support of Plaintiff's Opposition. The filing included declarations by Plaintiff ("Plaintiff's Decl.") and CIW inmates Alisia Lazos ("Lazos Decl.") and Theresa Torricellas ("Torricellas Decl."). Defendants did not file a Reply or object to the Plaintiff's evidentiary submissions. Thus, this matter is now ready for decision.

## LEGAL STANDARDS

The Court must render summary judgment if the papers show that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). At the summary judgment stage, the court's function is not to weigh the evidence or determine the truth of the matter but, rather, to determine whether there is any genuine issue for trial. *See Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505; *Balint v. Carson City,* 180 F.3d 1047, 1054 (9th Cir.1999) (en banc). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989).

## FACTUAL SUMMARY

Unless otherwise noted, the Court finds the following facts to be undisputed:

---

1. Plaintiff seeks the following injunctive relief: i) the expungement from her prison record of any and all determinations of misconduct arrived at in proceedings that failed to comport with due process; ii) that appropriate personnel at CIW be reprimanded and instructed to ensure that the constitutional violations inflicted upon Plaintiff and other inmates do not occur in the future; iii) that Petitioner receive no adverse action as a result of filing the current action; and iv) that the Court conduct an *in camera* hearing to determine the reliability of the confidential informant relied upon at her hearing. *See* Complaint at 6.

*Plaintiff's Placement in Administrative Segregation at CIW.*

On March 17, 2000, Plaintiff, an inmate at CIW, was placed in Administrative Segregation ("Ad Seg"). *See* Complaint at 5. Plaintiff was placed there pending an investigation conducted by Defendant Randolph and Defendant Jones of the Investigative Services Unit ("ISU") for trafficking heroin into CIW. *Id.* at 5–6. On March 22, 2000, Plaintiff received a California Department of Corrections ("CDC") Form 1030 authored by Defendant Randolph which indicated that Plaintiff was responsible for facilitating information regarding drug transactions in CIW's visiting center. *See id.* at 6. On May 5, 2000, Plaintiff was issued a CDC Form 115, Log no. II–196–2000, which stated that the drugs involved were for personal use. *Id.*

On May 24, 2000, Plaintiff received Incident Report, Log no. CIW–CEN–00–05–0046. Such report referred to the use of the Inmate Monitoring and Recording System ("IMARS") and the U.S. mail and indicated that Plaintiff was investigated for "having knowledge of particular facts and consciously aiding in the commission of introducing narcotics through the prison visiting center" based on Defendant Randolph's and Defendant Jones' ISU investigation. *See* Complaint at 6 and Supp. p. 1.

On June 4, 2000, Plaintiff received a hearing on CDC Form 115, Log no. II–196–2000, and was found guilty of violating Calif. Code Regs. tit. 15, § 3016(c).[2] Plaintiff asked to see copies of the U.S. mail and to hear the IMARS recording(s) implicating her in the drug conspiracy.

Defendants do not dispute the contention that Plaintiff's requests were denied. *See* Motion at 3.[3] The evidence relied upon in finding Plaintiff guilty included CDC Rules Violation Report (RVR) Form 115, Log no. II–196–2000, Confidential Informant statements, U.S. Mail, Incident Report, Log no. CIW–CEN–00–05–0046, a CDC Supplemental Report dated May 26, 2000, and an Investigative Employee Report dated June 3, 2000. *See* Complaint at Supp. p. 1.

On August 13, 2000, an Order for Rehearing was issued. *See* Complaint at Supp. p. 1. The rehearing order recognized that the specific charge on CDC Form 115, Log no. II–196–2000 did not match the charges made in its body; that the CDC Form 1030 was written on May 2, 2000, but references a CDC Form 115 dated May 5, 2000, which at that time had not been written; that the CDC form 1030 did not include the dates or type of information placed in the Confidential section of Plaintiff's Central file ("C-file"); that the CDC Form 1030 states "Inmate Keel participated for the purpose of personal use," but the body of the CDC 115 accuses her of conspiring to introduce narcotics for the purpose of distribution and/or trafficking; that, at the time of the June 4, 2000, hearing, crucial evidence in the form of telephone conversations was considered by the Senior Hearing Officer (SHO) but not reviewed by him because it was not in Plaintiff's C-file, and that, while a supplemental report CDC Form 115C was prepared on May 26, 2000, indicating that IMARS was used, nothing from IMARS was available to the SHO to substantiate this, making the confidential sources' testimony hearsay; that, while the SHO stated

---

**2.** Calif.Code Regs. tit. 15, § 3016(c) states: "Inmates shall not distribute, as defined in section 3000, any controlled substance or controlled medication." *See* Exh. B to German Decl.

**3.** Defendants' failure to deny allegations of a complaint constitutes a judicial admission of the matters alleged. Fed.R.Civ.P. 8(d). No additional evidence is required to prove the matters so admitted. *Lockwood v. Wolf Corp.,* 629 F.2d 603, 611 (9th Cir.1980)

the confidential sources had previously provided information which proved true, no documentation other than the CDC Form 1030 supported this; and that, although the Institution Classification Committee (ICC) assessed and imposed a Segregated Housing Unit (SHU) term, the SHO was unclear of what he found Plaintiff guilty. *See* Complaint at Supp. p. 2 and Exh. D to German Decl.

On August 16, 2000, Plaintiff was reissued a CDC Form 115, Log no. II–351–2000 authored by Defendant Randolph. On November 17, 2000, Plaintiff received a hearing on CDC Form 115, Log no. II–351–2000 and was found guilty of violating Calif. Code Regs. tit. 15, § 3016. *See* Complaint at Supp. pp. 2–3. Defendant Pahua was the SHO at this hearing, and Plaintiff was found guilty of the specific act of "Conspiracy to Introduce a Controlled Substance into the Institution." The evidence relied upon in finding Plaintiff guilty included CDC RVR Form 115, Log no. II–351–2000, IMARS, U.S. Mail, Incident Report, Log no. CIW–CEN–00–05–0046, Investigative Employee Report, Confidential Memoranda dated May 2, 2000, and August 7, 2000, and witness statements. *See* Complaint at Supp. pp. 2–3 and Exh. E to German Decl.

*Conditions of Confinement in Administrative Segregation at CIW.*[4]

It is undisputed that Plaintiff did not suffer a forfeiture of time credits due to her placement in Ad Seg. *See* Defendants' Undisputed Fact No. 17 and Plaintiff's Responses to Defendants' Proposed Statement at ¶ 13. Due to her placement in Ad Seg, Plaintiff states that she lost her job as a baker, her lead guitarist role in the CIW band, and her ability to participate in self-help groups and Native American spiritual ceremonies. *See* Plaintiff's Decl. at ¶ 1. Plaintiff also lost numerous privileges due to her Ad Seg placement, which she enjoyed prior to such placement, i.e., she had less money to spend on commissary items every month ($140 vs. $35 in Ad Seg), she could not purchase certain items (usually food items from special sales held by various inmate groups or organizations) while in Ad Seg, she could not receive packages from outside the facility which prevented her from receiving hygiene products from outside sources. However, while in Ad Seg, Plaintiff declares that she could purchase "substandard" hygiene products. *See* Plaintiff's Decl. at ¶ 2. In addition, there was no washing machine for inmates in Ad Seg. Consequently, Plaintiff had to hand wash her clothing which was made difficult due to a small sink in her cell and water of weak pressure and tepid temperature. *See* Plaintiff's Decl. at ¶ 3.

Furthermore, Plaintiff declares that, once placed in Ad Seg, her ability to go outside her cell was curtailed to three or four times a week for several hours at a

---

**4.** The facts relevant to the conditions of confinement in Ad Seg are gleaned from Plaintiff's declaration in support of her opposition, to the extent that it complies with the strictures of Fed.R.Civ.P. 56(e). *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (The facts on which the opposition to a summary judgment motion relies must be admissible at trial.); *Curnow v. Ridgecrest Police,* 952 F.2d 321, 324 (9th Cir.1991).

However, since Defendants did not object to the Plaintiff's declarations or otherwise controvert the matters described therein in a Reply, the Court deems such facts undisputed. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2722, at 384–85 (3d ed. 1998) ("As is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived.") (footnotes omitted); *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33, 37 (D.C.Cir.1987).

time. Her visits in Ad Seg were limited to non-contact visits of about 1 hour. Prior to her Ad Seg placement, Plaintiff's ability to stay outside was limited only by an 8:30 p.m. curfew, and her non-contact visits were limited only by general visiting hours. *See* Plaintiff's Decl. at ¶ 4.

Plaintiff declares that she was diagnosed with a fungus on her hands after cleaning her cell. Plaintiff declares that the cells in Ad Seg were "very filthy" but does not indicate whether such a condition differed from the non-Ad Seg cells. Plaintiff further declares that the sponges used to clean the Ad Seg cells were dirty, and the water used was dirty dark brown. Plaintiff does not indicate whether the cleaning implements used in Ad Seg differed significantly from that used in non-Ad Seg housing. *See* Plaintiff's Decl. at ¶ 5.

Plaintiff further declares that mice and birds were present in the Ad Seg cells. *See* Plaintiff's Decl. at ¶ 6. Plaintiff does not indicate that these animals were absent from the non-Ad Seg cells. Plaintiff further declares that she was denied her ability to practice her spirituality because only Christian church services were offered in Ad Seg. *See* Plaintiff's Decl. at ¶ 7. Finally, Plaintiff declares that she could not use a phone in Ad Seg and was denied the ability to do hobby crafts. *Id.*

### DISCUSSION

**A. *Summary judgment is appropriate because, as a matter of law, Plaintiff was not deprived of a liberty interest.***

Plaintiff appears to be making two claims in her Complaint, both of which are based on the Due Process Clause of the Fourteenth Amendment. First, Plaintiff is challenging her placement in Ad Seg during the pendency of an investigation involving Plaintiff and other inmates as be-

ing a violation of her due process rights. Second, Plaintiff appears to contend that the disciplinary hearing that resulted in her receiving a Rules Violation Report ("RVR") for conspiracy to introduce controlled substances into the institution also violated procedural due process. Each claim will be analyzed in turn.

*Placement in Ad Seg pending administrative investigation.*

■ Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when she is charged with a disciplinary violation. *Wolff v. McDonnell,* 418 U.S. 539, 564–571, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Such protections include the right to call witnesses, to present documentary evidence, and to have a written statement by the fact finder as to the evidence relied upon along with the reasons for the disciplinary action taken. *Id.*

■ These procedural protections, however, only apply when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Ramirez v. Galaza,* 334 F.3d 850, 860 (2003) ("If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process.") (citations omitted). Few protected liberty interests have been identified by the Supreme Court. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (identifying the freedom from transfer to a mental hospital as a protected liberty interest); *Washington v. Harper,* 494 U.S. 210, 221–22, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990) (identifying the freedom from the involun-

tary administration of psychotropic drugs as a protected liberty interest).

*As a matter of law, placement in administrative segregation does not implicate a protected liberty interest.*

Placement in administrative segregation, in and of itself, does not implicate a protected liberty interest. *See, e.g., Sandin,* 515 U.S. at 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 ("[D]isciplinary segregation, with insignificant exceptions, mirror[s] those conditions imposed upon inmates in administrative segregation and protective custody."); *Resnick v. Hayes,* 213 F.3d 443, 448–49 (9th Cir.2000) (holding that pre-sentencing prisoner had no liberty interest in being free from administrative segregation). Accordingly, Plaintiff's ability to avoid summary judgment turns on the existence of a triable issue of material fact as to whether the administrative segregation Plaintiff endured was an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin, supra,* 515 U.S. at 484, 115 S.Ct. 2293, 132 L.Ed.2d 418; *Keenan v. Hall,* 83 F.3d 1083, 1088 (9th Cir.1996).

*The undisputed facts do not support a finding that Plaintiff suffered atypical or significant hardship while in administrative segregation.*

The authorities generally hold that administrative segregation does not present an atypical or significant hardship on the inmate. *See Sandin,* 515 U.S. at 486, 115 S.Ct. 2293 ("Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."); *Wagner v. Hanks,* 128 F.3d 1173, 1174 (7th Cir.1997) ("But it would be difficult (we do not say impossible) to make disciplinary segregation sufficiently more restrictive than the conditions of the general population of such a prison to count as an atypical and significant deprivation of liberty-that is, to count as a substantial incremental deprivation-without scraping up against the Eighth Amendment's prohibition against cruel and unusual punishments."); *Freitas v. Ault,* 109 F.3d 1335, 1337 (8th Cir.1997) ("We believe that as a matter of law these conditions [of standard administrative segregation] do not constitute an 'atypical and significant' hardship, ... when compared to the burdens of ordinary prison life.") (internal citation omitted).

Although the contours of the "atypical and significant hardship" standard are fact specific, it has been held to be less than an Eighth Amendment violation. *Keenan v. Hall,* 83 F.3d 1083, 1088–89 (9th Cir.1996)[5]; *see also Wagner v. Hanks,* 128 F.3d 1173, 1174 (7th Cir.1997). Accordingly, the facts in cases analyzing an "atypical and significant hardship" are instructive as to whether the facts in Plaintiff's case meet such a standard.

In *Freitas v. Ault,* 109 F.3d 1335, 1337 (8th Cir.1997), the Court described conditions of confinement that, as a matter of law, failed to satisfy the "atypical and significant hardship" standard.

It is undisputed that Mr. Freitas's transfer resulted in several changes in the conditions of his confinement. Upon his arrival at Anamosa, Mr. Freitas was

---

**5.** The *Keenan* Court opined that:
> [I]f [the district court] finds conditions in the [Intensive Management Unit] IMU that violate the Eighth Amendment, the transfer to the IMU would impose "atypical and significant hardship." We do not suggest, however, that the new test is synonymous with Eighth Amendment violation. What less egregious condition or combination of conditions or factors would meet the test requires case by case, fact by fact consideration.

*Keenan, supra,* 83 F.3d at 1088–89.

placed in administrative segregation ("lock-up") for ten days while [North Central Correctional Facility ("NCCF")] officials contemplated whether to take disciplinary action against him. While in "lock-up," Mr. Freitas was allowed out of his cell for approximately one hour a day. After no disciplinary action followed, Mr. Freitas was released into the general prison population and placed in "on-call" status for thirty days. During that time, Mr. Freitas was allowed out of his cell a few hours each day and could have a limited number of visitors, but he could neither work nor enjoy phone privileges.

Mr. Freitas did not regain Level V status [his security designation prior to his transfer to Anamosa] for approximately three months. Even then, however, Mr. Freitas enjoyed fewer privileges than he had at NCCF. He had fewer phone and visiting rights, his ability to keep personal items in his cell was restricted, he was required to be in his cell more often, his movements within the prison were limited more, and he was in a higher-security facility. The job that Mr. Freitas eventually gained at Anamosa paid significantly less than his job at NCCF, and Mr. Freitas also lost the ability to earn a "good time" work bonus during the interim between his arrival at Anamosa and his new job, although this loss evidently had no practical effect on the duration of his sentence, because he was paroled approximately sixteen years before his release date and no previously earned time was revoked.

*Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir.1997).

The *Freitas* Court found that no due process violation would lie on the ten days of administrative segregation endured by Mr. Freitas and the thirty days of "on-call"

status. The Court further found that neither Mr. Freitas's loss of a higher-paying job and other privileges, nor the lost ability to earn good time (when no previously earned bonus time had been revoked and the loss evidently had no other practical effect on Mr. Freitas's sentence), constituted an atypical hardship. *Freitas, supra,* 109 F.3d at 1338.

The Supreme Court in *Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), articulated the circumstances that would reach the "atypical and significant hardship" sufficient to trigger due process protections.

For an inmate placed in OSP [Ohio State Penitentiary, Ohio's only Supermax prison], almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room. Save perhaps for the especially severe limitations on all human contact, these conditions likely would apply to most solitary confinement facilities, but here there are two added components. First is the duration. Unlike the 30–day placement in *Sandin,* placement at OSP is indefinite and, after an initial 30–day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. [Citation omitted]. While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context. It follows that respondents have a liberty interest in avoiding assignment to OSP. *Sandin, supra,* at 483, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418.

*Wilkinson v. Austin,* 545 U.S. 209, 125 S.Ct. 2384, 2394–95, 162 L.Ed.2d 174 (2005).

In light of the foregoing authorities, this Court now turns to examine the facts presented by Plaintiff in support of her position that her Ad Seg placement imposed " 'atypical and significant hardships' ... when compared to the burdens of ordinary prison life." *Sandin, supra,* 515 U.S. at 484, 115 S.Ct. 2293.

*Plaintiff's Conditions of Confinement.*

■ Viewing the facts of Plaintiff's conditions of confinement in Ad Seg in the light most favorable to the non-moving party, it appears to this Court that Defendants are entitled to judgment as a matter of law. At the outset, the condition of the cells and the presence of vermin will not defeat a summary judgment motion where, as here, Plaintiff has not provided admissible evidence that such conditions are atypical or impose a significant hardship in relation to non-Ad Seg cells.

Furthermore, the facts presented by Plaintiff do not reach the level of hardship and atypicality enunciated in *Austin, supra.* Plaintiff has not indicated, much less provided admissible evidence, that her Ad Seg term was indefinite or that the term would render her ineligible for parole. Such facts were dispositive in *Austin. See id.* at 545 U.S. 209, 125 S.Ct. 2384, 2394–95, 162 L.Ed.2d 174. Furthermore, it is undisputed that Plaintiff's credit forfeiture was cancelled and, therefore, her Ad Seg placement did not impact her term of incarceration.

In addition, Plaintiff did not suffer the "severe limitations on all human contact" endured by the Plaintiff in *Austin.* To the contrary, Plaintiff concedes that she had non-contact visits of one hour in length.

Furthermore, the curtailment on Plaintiff's ability to recreate outdoors to three or four times a week for several hours at a time does not raise a triable issue of fact regarding atypicality. The Plaintiff in *Austin* had one hour of exercise *indoors* daily.

Finally, the loss of privileges (loss of job, no phone privileges, limited time out of cell, limitation on visitors) recited in Plaintiff's declaration are akin to those suffered by the Plaintiff in *Freitas* and, even viewed in the light most favorable to Plaintiff, does not raise a triable issue of fact as to whether the Ad Seg placement was atypical or imposed significant hardships unique from those endured by the general population.

Similarly, the contention of a restraint on Plaintiff's freedom of religion does not raise a triable issue of material fact. Case authorities recognize that an inmate's religious freedoms may be curtailed when justified and reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, as a matter of law, this Court does not find the curtailment of an Ad Seg inmate's religious exercise to be "atypical" in comparison to the conditions found in non-Ad Seg confinement.

Based on the foregoing, this Court finds that Plaintiff has failed to carry her burden of raising a triable issue of material fact on whether her placement in Ad Seg qualifies as an " 'atypical and significant hardship[ ] ... when compared to the burdens of ordinary prison life' " (*Sandin, supra,* 515 U.S. at 484, 115 S.Ct. 2293) that would support her procedural due process claim. Because the undisputed facts fail to give rise to a liberty interest protected by the Due Process Clause, Defendants are entitled to judgment as a matter of law.[6]

6. Plaintiff has also provided two declarations  from inmates Alisia Lazos ("Lazos Decl.")

**B.** *Plaintiff was accorded due process in the disciplinary hearings.*

Assuming Plaintiff had a protected liberty interest to remain free from Ad Seg, Defendants next contend that summary judgment is proper because Plaintiff received all process due her in the disciplinary hearing relating to the charge against her for conspiracy to introduce a controlled substance into the institution. The Court agrees. Also, to the extent that Plaintiff claims she was denied procedural due process at such hearings, such a claim fails as a matter of law. This conclusion is borne out upon application of the undisputed facts to the relevant legal standard.

█ In analyzing a due process claim, the Court must first decide whether Plaintiff was entitled to any process, and, if so, whether she was denied any constitutionally required procedural safeguard. *Sandin, supra,* 515 U.S. at 484, 115 S.Ct. 2293. For a prison disciplinary hearing, the procedural due process safeguards are: (1) written notice of the charges, no less than twenty-four hours prior to the hearing; (2) a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Wolff v. McDonnell,* 418 U.S. 539, 565–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

*Defendants' Evidence.*

Defendants, as the moving party, bear the initial burden on the issue of whether Plaintiff received all process that was due her. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff was issued two RVRs in this matter, one on May 5, 2000, which was subsequently reissued on August 29, 2000. Two hearings on these RVRs were conducted, one on June 4, 2000, and a rehearing on November 17, 2000. Defendants have provided documentary evidence to show that Plaintiff was provided notice of the charges in each RVR no less than 24 hours prior to each hearing. *See* Exhs. C, D, and E of German Decl. The same documentary evidence describes the evidence relied on and the reasons for the disciplinary action. *See* Exh. C to German Decl. Finally, the evidence provided by the De-

and Theresa Torricellas ("Torricellas Decl.") in support of her opposition. *See* Lazos Decl. and Torricellas Decl. Although Defendants did not object to these declarations, the Court, in compliance with the strictures of Fed. R.Crim.P. 56(d), elects not to consider them for several reasons.

First, Torricellas declares that she was confined in Ad Seg for several time periods, the latest being from October of 2001 to January of 2002, and proceeds to recite the difficulties she encountered therein. *See* Torricellas Decl. The Court refuses to consider the Torricellas declaration because it fails to lay the foundation that the conditions of confinement during the time periods of Torricellas' confinement in Ad Seg were substantially similar to that encountered by Plaintiff in March of 2001. Accordingly, the Torricellas' declaration is rejected.

The Lazos declaration, although based on her incarceration in Ad Seg at the same time as Plaintiff, does not raise a triable issue of material fact on the issue of atypicality. Specifically, Lazos fails to contrast the conditions she describes in Ad Seg with the conditions of non-Ad Seg confinement. *See* Lazos Decl. It is Plaintiff's burden to prove that Ad Seg conditions of confinement are "atypical" in relation to the ordinary incidents of prison life, in order to qualify for due process protections therefrom. *See* Discussion, *infra.* The Lazos declaration fails to provide such a comparison.

Finally, neither declaration gives rise to facts akin to those in *Austin.* Thus, even if considered by this Court, the Torricellas and Lazos declarations fail to raise a triable issue of material fact regarding the "atypicality" of Ad Seg confinement.

fendants indicates that Plaintiff was afforded the opportunity to ask questions of the witnesses and that such questioning transpired over a period of two hours and forty-five minutes. *See* Exh. E to German Decl. Accordingly, Defendants have satisfied their initial burden on this aspect of their motion for summary judgment.

*Plaintiff's Evidence.*

To defeat the Defendants' motion for summary judgment, Plaintiff must come forward with admissible evidence to raise a triable issue of material fact on the issue of whether she was accorded all the protections she was entitled to under procedural due process. *See Celotex, supra,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265. As best this Court can tell, Plaintiff's due process challenge consists of three sub-claims. First, Plaintiff challenges the use of confidential informants in her disciplinary hearing. *See* Complaint at 6. Second, Plaintiff alleges that the failure to provide her with the actual IMARS and inmate mail relied upon in her disciplinary hearing violated due process. *See* Complaint at Supp. pp. 1 and 2. Finally, Plaintiff contends that she was denied a transcript of the disciplinary hearing. *See* Complaint at Exh. F. Each sub-claim shall be analyzed in turn.

*Use of Confidential Informant.*

■ At the outset, it appears to the Court that Plaintiff is challenging the reliability of information provided by confidential informants which was used in the disciplinary hearings. *See* Plaintiff's Decl. at ¶ 7. However, as a matter of law, the use of confidential information in a prison disciplinary hearing does not offend due process under the facts and circumstances

presented in this case. The Ninth Circuit has held that:

> [A] prison disciplinary committee's determination derived from a statement of an unidentified inmate informant satisfies due process when (1) the record contains some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Review of both the reliability determination and the safety determination should be deferential.

\*     \*     \*     \*     \*     \*

> Reliability may be established by ... (2) corroborating testimony ....

*Zimmerlee v. Keeney,* 831 F.2d 183, 186 (9th Cir.1987).

Here, Plaintiff has provided the Court with a Confidential Information Disclosure Form, dated August 14, 2000, which expressly states that the identity of the confidential source(s) cannot be disclosed without endangering the source(s) or the security of the institution. *See* Plaintiff's Opp. at Exh. R. The same document states that the information from the confidential source is deemed reliable because more than one source independently provided the same information, the source incriminated himself/herself in a criminal activity when providing the information, and part of the information provided by the source(s) has already proven to be true. *See id.* Based on the foregoing, and contrary to Plaintiff's objections,[7] Plaintiff

---

7. In her Opposition, Plaintiff states that "[t]o my knowledge and belief, no reliable determination was made by the hearing officers in respect to the substance and relevance of the supposed confidential information or the reli-

ability of its sources, but because of the hearing officers bias and inclinations to go along with Officer Randolph and Jones, they found me guilty even though there was no reliable evidence against me demonstrating guilt for

fails to raise a triable issue of fact on the issue of the use of confidential source(s) where, as here, this Court is bound to review the safety and reliability determinations deferentially. *See Zimmerlee, supra,* 831 F.2d at 186. Accordingly, Defendants are entitled to judgment as a matter of law on this sub-claim of a procedural due process violation.

*IMARS Transcript and U.S. Mail.*

■ Plaintiff next appears to contend that her due process rights were violated when the Defendants failed to provide transcripts of intercepted inmate phone calls ("IMARS") and inmate mail that were relied upon during her disciplinary hearing. *See* Plaintiff's Opp. at 3, Complaint at Supp. pp. 2–3. Due process requires that an inmate receive advance written notice of the claimed violation and a written statement of the evidence relied on and reasons for discipline. *Wolff,* 418 U.S. at 563–66, 94 S.Ct. at 2978–80. *Wolff* provides little guidance as to the specificity of notice necessary to satisfy due process. However, the Court notes that, in identifying the safeguards due process requires in this context, courts should remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." *Hill,* 472 U.S. at 454–55, 105 S.Ct. at 2773–74.

Here, Plaintiff does not dispute that she received notice and a statement of charges. In fact, Exhibit B to Plaintiff's Complaint at page 23 provides:

> The evidence derived from the IMARS were several conversations of detailed information regarding several money or-

ders that were expected from Oxnard, San Diego, Florida, Illinois and Vacaville. The amount of each money order was quoted, along with specific instruction of how each order is to be used. The money drop location was Lancaster, California. Serial numbers, from the money orders, were quoted on the IMARS, and verified through copies sent into the institution, for specific inmates, by the incoming U.S. mail. The inmate caller used AKA's and identified individuals with AKA's to the recipient of the calls. Through the AKA list maintained in the Investigation office, the individuals were properly identified along with their CDC number.

> The monitoring of the incoming and outgoing U.S. mail (into CIW), obtained information to link the CIW inmates to the outside individuals identified on the IMARS. The mail verified the individuals attempting to assist the CIW inmates with the introduction of narcotics through CIW's Visiting Center. Through their correspondence, the inmates linked themselves to the money drop location, passwords, and instructions to specific individuals.

*Id.*

Plaintiff contends that she was denied the opportunity to listen to the IMARS tape or to read the letters. *See* Complaint at Exh. A, p. 8. Plaintiff does not challenge the foregoing description of their contents. Rather, Plaintiff contends that the actual recordings and writings should have been provided to her to ascertain whether the intercepted communications contained her voice or handwriting. *Id.*

---

the disciplinary charges alleged or found." *See* Plaintiff's Opp. at 3. Plaintiff's challenge to the use of confidential information lacks evidentiary support, and the bare allegation of wrongdoing is insufficient to defeat Defen-

dants' summary judgment motion. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (summary judgment cannot be avoided by relying solely on conclusory allegations unsupported by factual data).

The notice required under the Due Process clause must provide the prisoner with the chance to marshal facts to prepare for her defense and to clarify the charges. *Wolff, supra,* at 564, 94 S.Ct. at 2978. Plaintiff was informed that she was being charged with conspiring to introduce black tar heroin into CIW and information supportive of the charge was gleaned from IMARS and intercepted inmate mail, as well as from confidential sources.

■ The Court does not find that Plaintiff was denied due process on the basis that she was not permitted to listen and read the intercepted communications for herself. She was provided with written notice of the evidence to be relied on in the disciplinary hearing. Moreover, such notice was detailed and explained the manner in which Plaintiff came to the attention of prison authorities. The notice provided Plaintiff with ample opportunity to defend against the charges and, thereby, satisfied due process. Accordingly, Defendants are entitled to judgment as a matter of law on this sub-claim of a procedural due process violation.

*Failure to Provide Plaintiff with Transcript of Disciplinary Hearing.*

■ Plaintiff appears to also contend that her procedural due process rights were violated when she requested, but did not receive, a transcript of the second disciplinary hearing. *See* Plaintiff's Decl. at ¶ 10. However, Plaintiff does not enjoy a due process guarantee to have the disciplinary hearing recorded. *See Mitchell v. Dupnik,* 75 F.3d 517, 526 (9th Cir.1996) (reversing summary judgment because no constitutional violation for failure to record disciplinary hearing). Accordingly, Defendants are entitled to judgment as a matter

8. Having found that Defendants are entitled to judgment as a matter of law on Plaintiff's due process claims, the Court need not ad-

of law on this sub-claim of a procedural due process violation.[8]

## RECOMMENDATION

IT THEREFORE IS RECOMMENDED that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) granting Defendants' motion for summary judgment; and (3) directing that Judgment be entered dismissing this action with prejudice.

dress any other arguments contained in Defendants' motion for summary judgment.